UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTARA MICHELLE,<br><br>    Plaintiff,<br>v.<br><br>ARCTIC ZERO, INC.,<br><br>    Defendant. | Civil No. 12cv2063 GPC (NLS)<br><br>Consolidated with:<br>12cv2279<br>12cv2284<br>12cv2544<br>12cv2593<br>12cv2647<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A PROTECTIVE ORDER AND OTHER SANCTIONS AND REQUIRING FURTHER BRIEFING**<br>**[Doc. No. 53]** |

Defendant, Arctic Zero, Inc., filed a motion seeking a protective order and other sanctions against Plaintiff, Altara Michelle, for intercepting privileged test results pursuant to an allegedly improperly-issued subpoena. (Dkt. No. 53.) Michelle filed an opposition, arguing she had an agreement with former defense counsel to share lab results, and even if the intercepted results were privileged, Arctic Zero waived the privilege by posting the test results on its public website. (Dkt. No. 59.) Arctic Zero filed a reply asserting it never agreed to share lab results with Plaintiff and that it posted redacted test results on its website. (Dkt. No. 61.)

/ / /

I. **Relevant Background.**

On August 20, 2012, the Today Show published an article claiming Arctic Zero misstated the calorie content of its frozen dessert products. (Dkt. No. 53-1 at 4.) The next day, Michelle filed a purported class action complaint against Arctic Zero, alleging Arctic Zero deceptively labeled its products in violation of California's unfair competition and false advertising laws. (Dkt. No. 1.) On September 21, 2012, before Arctic Zero filed an answer or counsel completed a Rule 26(f) conference, Michelle served EMSL Analytical, Inc. ("EMSL"), the lab used by the Today Show, with a subpoena requesting any and all test results related to Arctic Zero's products. (Dkt. No. 59 Ex. C.) Michelle alleges she served Arctic Zero with a copy of the subpoena via mail and fax the same day. *Id.*

On September 26, 2012, Michelle contacted Arctic Zero, via email, to request a meeting to discuss test results that Michelle obtained from Kappa Labs, an independent laboratory. (Dkt. No. 59 Ex. D.) In the email, Michelle said she was still waiting for the production of EMSL's test results, pursuant to the subpoena. *Id.* The next day, both parties participated in a conference call. (Dkt. No. 59-4 ¶ 7.) Michelle alleges that during this call the parties agreed to informally share information and lab results, in an effort to "proceed to an early mediation." *Id.* On October 26, 2012, Arctic Zero substituted in the law firm of Braunhagey & Borden LLP as its attorneys of record. (Dkt. No. 19.) New counsel filed an answer for Arctic Zero on October 28, 2012. (Dkt. No. 20.) The next day, Michelle filed a motion to consolidate cases and asked that her counsel be appointed as interim lead counsel. (Dkt. No. 21.)

On November 8, 2012, Michelle received lab results from EMSL, pursuant to the September subpoena. (Dkt. No. 59-4 ¶ 9.) Unbeknownst to Michelle, Arctic Zero had requested a nutritional analysis of its products by EMSL in September 2012, after the Today Show article was published. (Dkt. No. 53-1 at 4; Dkt. No. 59 at 4.) In addition to the Today Show results, Michelle received the lab results from the tests that Arctic Zero commissioned. (Dkt. No. 59-4 ¶ 9.) Michelle claims she did not think these lab results

were privileged material because Arctic Zero agreed to share results and did not object to the original subpoena. (Dkt. No. 59-4 ¶ 9.) Michelle did not tell Arctic Zero of the documents received, or send copies of the materials to Arctic Zero. *Id.* Even though the subpoena directed EMSL to produce documents only to Michelle's counsel, Michelle somehow believed Arctic Zero would have also received a copy of the results of the subpoena from EMSL. (Dkt. No. 59-4 ¶ 9; Dkt. No. 59 Ex. C.) Arctic Zero claims it did not agree that Michelle could obtain its test results, nor did it know that Michelle received such results from EMSL. (Dkt. No. 61-1 ¶¶ 3, 5.)

In November 2012, Arctic Zero learned that Michelle intended to serve a subpoena on the Today Show seeking all documents and communications concerning Arctic Zero. (Dkt. No. 53-1 at 5.) On December 4, 2012, Arctic Zero wrote to Michelle, objecting to the subpoena as improper under Federal Rule of Civil Procedure 26 and requesting copies of any other outstanding subpoenas. (Dkt. No. 53-2 Ex. 2.) Michelle withdrew the subpoena to the Today Show but ignored Arctic Zero's other request, and did not provide any information about the subpoena she served on EMSL in September or the lab results received in response. (Dkt. No. 53-2 ¶ 10.)

Meanwhile, on December 3, 2012, Michelle had filed an opposition to a counter-application to be appointed interim lead counsel and replied to an opposition to her other application to be appointed interim lead counsel. (Dkt. No. 59-4 ¶ 10.) In those filings, which were served on Arctic Zero, Michelle said she received EMSL's lab results from tests that Arctic Zero commissioned. *Id.* As a result, Michelle contends that the court and all counsel were on notice that Michelle received the results Arctic Zero commissioned, pursuant to the September subpoena. (Dkt. No. 59 at 5.)

On March 11, 2013, Arctic Zero sent Michelle a letter expressing concerns about the merits of Michelle's claim. (Dkt. No. 53 Ex. 3.) On March 14, 2013, this Court held a status conference and issued an order setting deadlines to hold a Rule 26 discovery conference, submit a proposed discovery plan, exchange initial disclosures, and return for a case management conference. (Dkt. No. 41.)

On March 18, 2013, Michelle responded to Arctic Zero's letter and referred to the results of the nutritional analysis ordered by Arctic Zero. (Dkt. No. 53 Ex. 4.) Arctic Zero claims it never knew that Michelle had these test results before receiving the March 18th letter. (Dkt. No. 53-1 at 2.) On April 4, 2013, both parties participated in a telephonic case management conference. (Dkt. No. 42 at 2.) During the conference, Arctic Zero alleges it asked Michelle how it came into possession of the lab results referenced in the March letter. (Dkt. No. 53-2 ¶ 16.) Arctic Zero followed up with written correspondence later that day and asked Michelle to provide (1) all communications containing or referring to the test results commissioned by Arctic Zero; and (2) information about any other individuals who received a copy of the results. (Dkt. No. 53 Ex. 5.)

Even though Arctic Zero had expressly requested this information on December 4, 2012, Michelle waited until it received a second request and sent Arctic Zero a copy of the September subpoena and the lab results received pursuant to the subpoena on April 10, 2013. (Dkt. No. 59 Ex. E.) Michelle did not, however, provide Arctic Zero with the two categories of requested information regarding communications and recipients. (Dkt. No. 53 ¶ 17.) On April 12, 2013, Arctic Zero asked Michelle to meet and confer regarding the subpoena and suggested corrective measures Michelle could take to avoid judicial intervention. (Dkt. No. 53 Ex. 7.) Sometime after receiving Arctic Zero's request, Michelle contends that the EMSL lab results ordered by Arctic Zero were displayed on its public website. (Dkt. No. 59-4 ¶¶ 16, 17, 18.) Arctic Zero contends that although it decided to post select test results on its website, significant details were omitted. (Dkt. No. 61 at 4.) Arctic Zero again asked Michelle to meet and confer on April 22, 2013, but Michelle never responded. Michelle's counsel alleges that because the parties were engaging in settlement discussions, she thought the subpoena matter was settled. (Dkt. No. 59-4 ¶ 19.)

On May 16, 2013, Arctic Zero filed the instant motion for a protective order and other sanctions. Arctic Zero requests the following relief: (1) a protective order or

injunction prohibiting Michelle from retaining, using and/or disseminating the privileged documents or summaries thereof; (2) discovery related to Michelle's counsel's receipt, transmission, use and/or reference to the privileged documents; (3) revocation of the pro hac vice admissions of Michelle's non-California counsel; (4) suspension of Michelle's counsel as interim lead counsel; and (5) an award of attorney's fees and costs that Arctic Zero incurred in filing this motion.

**II.     Discussion.**

      **A.     Propriety of the Subpoena.**

Under Federal Rule of Civil Procedure 26(d), "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," unless by court order or agreement of the parties. Fed. R. Civ. Proc. 26(d); *see Arista Records LLC v. Doe 1-43*, 2007 WL 4538697 *1 (S.D. Cal. Dec. 20, 2007). While Federal Rule of Civil Procedure 45 does not specify when a subpoena may be issued, because a subpoena is considered a discovery device, it is subject to the provisions of Rule 26(d). *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 561-62 (S.D. Cal. 1999). Additionally, before serving a subpoena requesting the production of documents, a party must give notice to all parties involved. Fed. R. Civ. Proc. 45(b)(1). The purpose of this rule is to allow an opposing party an opportunity to object. Fed. R. Civ. Proc. 45 advisory committee's note.

Michelle served a subpoena on EMSL, requesting all test results related to Arctic Zero's frozen dessert products, on September 21, 2012, more than one month before Arctic Zero formally appeared in this case and six months before the Rule 26(f) conference. It is unclear, though, whether Arctic Zero received notice of the subpoena. Although Michelle provided proof of service by mail and fax in her opposition to the motion, Arctic Zero contends no such copy was found in the former defense counsel's file. (Dkt. No. 53-2 ¶ 4.) As part of its response to Michelle's opposition, Arctic Zero submitted the declaration of former defense counsel, Ronald McIntire. (Dkt. No. 61 Ex. 1.) Mr. McIntire says he never agreed to share Arctic Zero's test results with Michelle.


(Dkt. No. 61-1 ¶ 3.) While he says he never knew Michelle obtained the EMSL test results he does not squarely address whether he received notice of the September 21st subpoena, as shown on the proof of service. (Dkt. No 59 Ex. C.)

This Court therefore orders Arctic Zero to provide a supplemental declaration from Mr. McIntire squarely addressing whether he ever received notice of the subpoena. If he did not receive notice, Mr. McIntire shall outline his law firm's procedures that were in place to ensure that he would have seen the subpoena, had it been properly served. The Court will then consider whether Michelle and her counsel violated Rule 26(d) or Civil Local Rules 83.4(a)(1)(f) and 83.4(b)(2)(g), and if so, the appropriate sanctions.

### B. Assertion of Privilege.

The Federal Rules of Civil Procedure allow parties to obtain discovery regarding any nonprivileged matter relevant to a party's claim or defense. Fed. R. Civ. Proc. 26(b)(1). The Rules protect confidential communications between attorneys and clients, as well as documents prepared by a party in anticipation of litigation. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1496 (9th Cir. 1989). Arctic Zero claims the subpoenaed documents Michelle received are privileged, but Arctic Zero does not provide any detail as to which documents are privileged or the type of privilege it asserts.

Pursuant to Rule 26(b)(5), the Court orders Arctic Zero to produce a privilege log expressly claiming the information that is privileged or subject to protection as trial-preparation material, and describing the nature of the documents, communications, or tangible things. Arctic Zero shall file and serve the privilege log, and shall also lodge with Chambers the actual privileged documents, so that the Court can review them in-camera. Without such information, this Court cannot evaluate Arctic Zero's claim of privilege or properly assess Arctic Zero's request for sanctions.

### C. Request for Expedited Discovery and Other Sanctions

Additional information is necessary to determine whether Michelle's alleged misconduct merits imposition of the sanctions sought, including a protective order,

revocation of pro hac vice status, suspension of counsel, and attorney's fees. For this reason, the Court grants Arctic Zero's request to conduct expedited discovery related to the subpoena. The Court reserves judgment on all other requested sanctions pending receipt of the privilege log and privileged documents, and the other court-ordered supplemental briefing.

### D. Attorney's Fees and Costs.

The Court continues to consider the question of attorney's fees and costs. Arctic Zero is ordered to submit an amended fee request and supplement the original information submitted with (1) the addition of hours expended on conducting the expedited discovery; and (2) information about the background and experience of its counsel in relation to the hourly billing rates charged.

## III. Order.

For good cause shown, the Court **GRANTS** in part Arctic Zero's motion for a protective order, and reserves judgment on the remaining issues. The Court **ORDERS**:

(1) The Court **GRANTS** Arctic Zero's motion for expedited discovery regarding Michelle's receipt and use of documents received pursuant to the September subpoena. By **July 26, 2013**, Michelle must identify to Arctic Zero all parties who reviewed, used, or obtained knowledge of the subpoenaed documents or their content; produce all communications with EMSL, and all documents produced by EMSL or any other party in response to the September subpoena; and produce all documents referring to, re-transmitting, summarizing, copying or otherwise commenting on the subpoenaed documents. By **August 2, 2013** Arctic Zero shall identify any witnesses it seeks to depose as a result of this discovery, and those depositions shall take place by **August 16, 2013**.

(2) By **August 2, 2013**, Arctic Zero shall file a supplemental declaration of Ronald McIntire to address notice of the September subpoena; submit a privilege log detailing the information that is privileged or subject to protection as trial-preparation material; and lodge for in-camera review the documents purported to be privileged.

(3) If Arctic Zero does not take any witness depositions related to the expedited discovery, it shall also file, by **August 2, 2013**, its amended fee request and any supplemental brief - no longer than five pages - addressing issues raised through the expedited discovery.  If Arctic Zero does take depositions related to the expedited discovery, the supplemental brief and amended fee request shall be filed by **August 23, 2013**.

(4) Michelle shall file an opposition - no longer than five pages - to any supplemental brief and amended fee request within seven calendar days of Arctic Zero filing those documents.

(5) Arctic Zero may file a reply - no longer than three pages - within five calendar days of the opposition being filed.

The Court **RESERVES** judgment on Arctic Zero's motion for a protective order; revocation of the pro hac vice admissions of Michelle's non-California counsel; suspension of Michelle's counsel as interim lead counsel; and an award of attorney's fees and costs pending review of the future submissions.

**IT IS SO ORDERED.**

DATED: July 18, 2013

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court